1 | Scott E. Davis
State Bar No. 8788
2 | SCOTT E. DAVIS, P.C.
2000 S. Eastern Avenue
3 | Las Vegas, NV 89104

4 | Telephone:  (702) 732-4410
Facsimile:  (602) 569-9720
5 | email: davis@scottdavispc.com

6 | *Attorney for Plaintiff Michael Rosenblatt*

7

**UNITED STATES DISTRICT COURT**

8

**DISTRICT OF NEVADA**

9

10

Michael Rosenblatt,

11

            Plaintiff,

12

      v.

13

Life Insurance Company of North America,
14 | Wyndham Worldwide Corporation, Group
Long Term Disability Plan for Employees of
15 | Wyndham Worldwide Corporation,

16

            Defendants.

Case No.

**COMPLAINT**

17

18      Now comes the Plaintiff Michael Rosenblatt (hereinafter referred to as "Plaintiff"),

19 | by and through his attorney, Scott E. Davis, and complaining against the Defendants, he

20 | states:

21                                    *Jurisdiction*

22      1.    Jurisdiction of the court is based upon the Employee Retirement Income

23 | Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f).

24 | Those provisions give the district courts jurisdiction to hear civil actions brought to recover

25 | employee benefits.  In addition, this action may be brought before this Court pursuant to 28

26

U.S.C. §1331, which gives the Court jurisdiction over actions that arise under the laws of the United States.

*Parties*

2.      Plaintiff is a resident of Clark County, Nevada.

3.      Upon information and belief, Defendant Wyndham Worldwide Corporation (hereinafter referred to as the "Company") sponsored, subscribed to and administered a group long term disability insurance policy, which was fully insured and administered by Life Insurance Company of North America (hereinafter referred to as "LINA").   The specific LINA long term disability policy is known as Group Policy LK0980063.   The Company's purpose in subscribing to the LINA policy was to provide disability insurance for its employees.   Upon information and belief, the LINA policy may have been included in and part of the Group Long Term Disability Plan for Employees of Wyndham Worldwide Corporation (hereinafter referred to as the "Plan") which may have been created to provide the Company's employees with welfare benefits.   At all times relevant hereto, the Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1).

4.      Upon information and belief, the Company or Plan may have delegated responsibility for the plan and/or claim administration of the policy to LINA.   Plaintiff believes that as it relates to his claim, LINA functioned in a fiduciary capacity as the Plan and/or Claim Administrator.

5.      Upon information and belief, Plaintiff believes LINA operated under a conflict of interest in evaluating his claim due to the fact it operated in dual roles as the decision maker with regard to whether Plaintiff was disabled as well as the payor of

benefits; *to wit,* LINA's conflict existed in that if it found Plaintiff was disabled it was also liable for payment of those benefits. [1]

6.     The Company, Plan and LINA conduct business within Clark County and all events giving rise to this Complaint occurred within Clark County.

### *Venue*

7.     Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391.

### *Nature of the Complaint*

8.     Incident to his employment, Plaintiff was a covered employee pursuant to the Plan and the relevant policy and a "participant" as defined by 29 U.S.C. §1002(7). Plaintiff seeks disability income benefits from the Plan and the relevant policy pursuant to §502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B) as well as any other employee benefits he may be entitled to as a result of being found disabled.

9.     After working for the Company as a loyal employee, Plaintiff became disabled on or about December 18, 2008 due to serious medical conditions and was unable to work in his designated occupation as a Telemarketer.  Plaintiff has remained disabled as that term is defined in the relevant policy continuously since that date and has not been able to return to any occupation as a result of his serious medical conditions.

10.     Following his disability, Plaintiff applied for, received and exhausted his short term disability benefits under the relevant short term disability policy.

---

[1] "A plan administrator's dual role of both evaluating and paying benefits claims creates the kind of conflict of interest referred to in Firestone. *That conclusion is clear where it is the employer itself that both funds the plan and evaluates the claim*, but a conflict also exists where, as here, the plan administrator is an insurance company. For one thing, the employer's own conflict may extend to its selection of an insurance company to administer its plan." *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343 (U.S. 2008) (emphasis added).

11.    Plaintiff then applied for long term disability benefits under the relevant LINA policy.  The relevant long term disability policy provides the following definition of a covered disability which applies to Plaintiff's claim:

You are totally disabled when LINA determines that, because of Injury or Sickness,

1.    he or she is unable to perform the material duties of his or her regular occupation, or solely due to Injury or Sickness, he or she is unable to earn more than 80% of his or her Indexed Covered Earnings; and

2.    after Disability Benefits have been payable for 24 months, he or she is unable to perform the material duties of any occupation for which he or she may reasonably become qualified based on education, training or experience, or solely due to Injury or Sickness, he or she is unable to earn more than 80% of his or her Indexed Covered Earnings.

12.    In support of his claim for long term disability benefits, Plaintiff submitted to LINA medical records from his treating physicians supporting his disability as defined by the relevant LINA policy.

13.    LINA notified Plaintiff in a letter dated June 3, 2009 that his claim for long term disability benefits had been approved and paid benefits for the period of June 8, 2009 through November 18, 2009.

14.    LINA notified Plaintiff in a letter dated October 8, 2009 that it was terminating benefits beyond October 7, 2009.

15.    Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed the October 8, 2009 denial of his claim for long term disability benefits and, in support of his appeal, Plaintiff submitted additional medical evidence to LINA demonstrating his total disability as defined in the relevant LINA policy.

16.    LINA informed Plaintiff in a letter dated January 21, 2010 it was terminating benefits beyond November 18, 2009.

17.    Plaintiff timely appealed LINA's January 21, 2010 termination of benefits by way of letter dated July 2, 2010.

18.    In further support of his appeal, Plaintiff submitted to LINA a narrative letter dated September 10, 2010 from his treating board certified internist, a Functional Capacity Evaluation Report dated July 12, 2010 and a vocational report dated September 14, 2010 which all opined Plaintiff was unable to work in any occupation.

19.    In addition to the medical records and reports submitted to LINA, Plaintiff also submitted a sworn affidavit from his wife, who confirmed it is her opinion Plaintiff is unable to work in any occupation at the present time and has been unable to do so since December of 2008.

20.    As part of its review of Plaintiff's claim for long term disability benefits, LINA obtained a medical review of Plaintiff's claim from R. Kevin Smith, D.O.

21.    Upon information and belief, Plaintiff believes Dr. Smith is a long time consultant for the disability insurance industry.  Plaintiff believes Dr. Smith has an incentive to protect his own consulting relationships with the disability insurance industry and LINA by providing medical review reports which selectively review or ignore evidence, such as occurred in Plaintiff's claim, in order to provide opinions and report(s) which are favorable to insurance companies and which supported the denial of Plaintiff's claim.

22.    On January 11, 2011 Dr. Smith contacted Plaintiff's physicians in writing and requested their comment on his assessment of Plaintiff's medical conditions and ability to function.

23.    In a letter dated February 1, 2011 Plaintiff's treating physician confirmed he had reviewed Dr. Smith's correspondence and disagreed with his conclusions that Plaintiff is capable of returning to the workforce.

24.    In a letter dated May 18, 2011, LINA notified Plaintiff it had denied his appeal for long term disability benefits under the LINA policy.  In the letter, LINA also

notified Plaintiff that he had exhausted his administrative levels of review and could file a civil action in federal court pursuant to ERISA.

25.    In evaluating Plaintiff's claim on appeal, LINA had an obligation pursuant to ERISA to administer Plaintiff's claim "solely in his best interests and other participants" which it failed to do. [2]

26.    Plaintiff believes LINA failed to consider the combination of his medical conditions when it determined he no longer met the definition of disability in the relevant policy.

27.    Plaintiff believes the reason LINA provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, is due to the dual roles it undertook as decision maker and payor of benefits which created an inherent conflict of interest and this conflict may also be the reason the Plan retained LINA to administer his disability claim.

28.    Plaintiff is entitled to discovery regarding the aforementioned conflicts of interest of LINA and any individual who reviewed his claim and the Court may properly weigh and consider evidence regarding the nature, extent and effect of *any* conflict of interest which may have impacted or influenced LINA's decision to deny his claim.

29.    With regard to whether Plaintiff meets the definition of disability set forth in the Plan, the Court should review the evidence in Plaintiff's claim *de novo*, because even if

---

[2] It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," Firestone, 489 U.S., at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B). *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (U.S. 2008).

the Court concludes the Plan confers discretion, the unlawful violations of ERISA committed by the Plan and its administrators as referenced herein are so flagrant they justify *de novo* review.

30.   As a direct result of LINA's decision to deny Plaintiff's disability claim he has been injured and suffered damages in the form of lost disability benefits, in addition to other potential employee benefits he may have been entitled to receive through or from the Plan and/or Company as a result of being found disabled.

31.   Pursuant to 29 U.S.C. §1132, Plaintiff is entitled to recover unpaid benefits, prejudgment interest, reasonable attorney's fees and costs from Defendants.

32.   Plaintiff is entitled to prejudgment interest at the rate of 10% per annum pursuant to the maximum rate permitted under Nevada law, or at such other rate as is appropriate to compensate his for losses he incurred as a result of Defendants' unjustified denial of payment of benefits.

WHEREFORE, Plaintiff prays for judgment as follows:

A.   For an Order requiring Defendants to pay Plaintiff disability benefits and any other employee benefits he may be entitled to as a result of being found disabled pursuant to the Plan and/or Policy from the date he was first denied these benefits through the date of judgment and prejudgment interest thereon, as well as any other employee benefits he may be entitled to from the Plan and/or Company as a result of being found disabled;

B.   For an Order directing Defendants to continue paying Plaintiff the aforementioned benefits until such time he meets the conditions for termination of benefits;

C.   For attorney's fees and costs incurred as a result of prosecuting this suit pursuant to 29 U.S.C. §1132(g); and

D.   For such other and further relief as the Court deems just and proper.

1

DATED this 8th day of July, 2011.

2

SCOTT E. DAVIS. P.C.

3

By:     */s/ Scott E. Davis*

4

Scott E. Davis
Attorney for Plaintiff

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26